**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES<br><br>v.<br><br>CHRISTIANE FISCHER,<br><br>Defendant. | ) | Criminal Action No. 22-CR-10309-AK |

**PRELIMINARY MEMORANDUM AND ORDER ON DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT**

Defendant Christiane Fischer was convicted after a jury trial for one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). [Dkt. 124]. Presently before the Court is the pre-sentence report ("PSR") prepared by the Probation Office and objections to the PSR raised by both parties. [Dkt. 156; id. at 29-33]. The Court held a hearing regarding these objections on October 29, 2026 [Dkt. 171], and thereafter received supplemental briefing from the parties [Dkt. 172].

The Court issues the following tentative ruling to advise counsel of its current inclinations prior to the scheduled sentencing on November 30, 2026. Having reviewed the parties' papers, the relevant portions of the trial record, and heard oral arguments from the parties, the Court is inclined to **SUSTAIN** the Defense's objections regarding the six-point enhancement for knowledge of drug trafficking and **OVERRULE** the Defense's remaining objections. This tentative ruling is the proposed decision of the Court and does not constitute a final order until the conclusion of the sentencing. Counsel is advised to use their allotted time during sentencing to focus specifically on the issues identified by the Court. The Court will hear further oral arguments and issue its final rulings at sentencing.

## I. BACKGROUND

The following undisputed facts are drawn from the PSR and accepted as true unless otherwise noted. See United States v. Occhiuto, 784 F.3d 862, 868 (1st Cir. 2015). On November 16, 2022, Defendant Christiane Fischer was indicted for participating in a money laundering conspiracy with her partner, as well as an individual named Philip Morose, Morose's mother, and other individuals from August 2016 to June 2018. [Dkt. 156 ¶ 8]. Fischer was the sole owner of several car rental businesses in Massachusetts, including PK Motor Cars, Inc., and Uni Auto Rental, Inc., and Uni Auto Center, Inc. [Id. ¶¶ 71-73]. Fischer and her partner were responsible for the day-to-day operations of each company. [See id. ¶ 73]. Morose and his mother were employees for Fischer's car rental businesses and were tasked with duties such as purchasing cars at auctions. [See Dkt. 137 at 60, 223].

From 2014 to 2018, Morose engaged in drug trafficking more than $2 million worth of fentanyl pills into Massachusetts. [Dkt. 156 ¶ 9]. Between 2016 and 2018, as part of the money laundering conspiracy, Fischer deposited cash into multiple bank accounts, transferred funds among those bank accounts, and purchased multiple properties, including a house valued at over $750,000 and commercial real estate for her car rental businesses. [Id. ¶¶ 11-14]. Morose lived in the purchased house until he had to vacate during renovations, which cost over $450,000 and which he paid for in cash. [Id. ¶ 13]. Morose also purchased multiple vehicles under Fischer's business' name, including a Chevrolet Tahoe and a BMW i8. [Id. ¶¶ 15-19]. Morose allegedly used at least some of these vehicles to traffic drugs to Massachusetts. [See id.]. For example, in May 2018, he installed a hidden compartment in the Chevrolet Tahoe. [Id. ¶ 19; Dkt. 135 at 132-34].

Morose's co-conspirator in this drug trafficking operation became a cooperating witness for the Government. [See Dkt. 156 ¶ 9]. In June 2018, at the direction of investigators, the

individual and Morose arranged to have an associate, who was an undercover agent, deliver fentanyl pills to Morose in Massachusetts in exchange for over $20,000 in cash. [Id.]. On June 4, 2018, Morose met with that undercover agent to make the planned exchange and was subsequently arrested. [Id. ¶ 10].

A jury trial for Fischer was held from November 17 to 24, 2025, after which the jury returned a guilty verdict for Fischer for one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). [Id. ¶ 2]. On October 15, 2026, the Probation Office filed Fischer's PSR, which includes one objection from the Government and eleven objections from the Defense. [Dkt. 156]. The Government responded to the objections in a written sentencing memorandum on October 22, 2026 [Dkt. 162], and a supplemental reply on October 27, 2026 [Dkt. 165]. The Government also filed a Motion for Preliminary Order of Forfeiture. [Dkt. 160]. In anticipation, Fischer lodged an objection to such motion for forfeiture several weeks prior. [Dkt. 152]. After conferring with the parties, the Court held a hearing on October 27, 2026, regarding the PSR objections and forfeiture disputes.[1] [Dkt. 167]. The Court invited the parties to file additional supplemental briefing, which the Government filed on November 5, 2026. [Dkt. 172].

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 32(c)(3)(D) provides that if the defendant "allege[s] any factual inaccuracy in the presentence investigation report . . . the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in

[1] In light of the Defense's opposition to forfeiture as well as Federal Rule of Criminal Procedure 32.2(b)'s instruction to issue a preliminary order of forfeiture prior to sentencing, the Court deemed it appropriate to hold a hearing regarding forfeiture prior to sentencing. Moreover, because of the extent of the defense's objections to the PSR, the Court deemed it expedient to hear argument regarding those objections prior to sentencing.

sentencing." Fed. R. Crim. P. 32(c)(3)(D); see also United States v. Bruckman, 874 F.2d 57 (1st Cir. 1989). While the court "is obliged to resolve any genuine and material dispute on the merits," the "dispute must be genuine"—that is, "if the defendant's objections to the [PSR] are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the [PSR]." Occhiuto, 784 F.3d at 868 (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003)).

If the court determines that a genuine factual dispute exists and, thus, a finding is necessary, the Government bears the burden of showing that the PSR is accurate by a preponderance of the evidence. United States v. Olivero, 552 F.3d 34, 40 (1st Cir. 2009). The court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." United States v. Cintron-Echautegui, 604 F.3d 1, 6 (1st. Cir. 2010) (quoting United States v. Zapata, 589 F.3d 475, 485 (1st Cir. 2009)). A district court also has discretion to "convene an evidentiary hearing when facts important to sentencing are genuinely in dispute." United States v. García, 954 F.2d 12, 19 (1st Cir. 1992). However, where a defendant "couch[es] his objections to the [PSR] exclusively as interpretations of facts, not as challenges to the underlying facts themselves, the [defendant] effectively obviate[s] any need for an evidentiary hearing." Id. (explaining that "[a] criminal defendant, after all, is not entitled to an evidentiary hearing upon demand").

If the court makes factual findings pursuant to Federal Rule of Criminal Procedure 32, the court must append "[a] written record of such findings and determinations" to "any copy of the [PSR] thereafter made available to the Bureau of Prisons," typically by including it in the "Additional Comments or Findings" section of the statement of reasons. United States v.

Hanono-Surujun, 914 F.2d 15, 18 (1st Cir. 1990) (quoting Fed. R. Crim. P. 32(c)(3)(D)); United States v. Murchison, 865 F.3d 23, 26 (1st Cir. 2017).

## III. DISCUSSION

The Government raises one objection to the PSR and the Defense raises eleven. Upon consideration of the parties' arguments as reflected in their briefing and during oral argument, the Court preliminarily determines that the objections should be resolved as follows.

### A. Objection 1 (Government) – Statutory Maximum Fine

Objection 1 from the Government involves the applicable statutory language concerning the maximum fine for a violation of 18 U.S.C. § 1956(h). Probation submits that they have amended the PSR in a manner that reflects the correct language. Thus, the Court finds that resolution of this objection is not necessary.

### B. Objections 1 & 5 (Defendant) – Third Party Acts

Objections 1 and 5 from the Defense involve ¶¶ 9, 10, 19, and 20 of the PSR, which describe conduct by Morose and the cooperating witness. The Defense argues that this information should be excluded because Fischer was not involved in these actions. However, because the Defense objects only to the inclusion of information and raises no objections to the accuracy of the factual statements regarding Morose and the cooperator, the Court finds that resolution of this objection is not necessary. See United States v. Melendez, 279 F.3d 16, 18 (1st Cir. 2002) (explaining that where an "objection went to the inclusion of statements" only and "not to their factual accuracy . . . the district court [i]s not required by Rule 32(c)(2)(D) to respond to [it] at sentencing").

### C. Objections 2 & 9 (Defendant) – Sophistication

Objections 2 and 9 from the Defense involve language in ¶¶ 11 and 32 of the PSR suggesting that Fischer engaged in sophisticated laundering, which is a predicate for a two-level

enhancement under the U.S. Sentencing Guidelines ("USSG") § 2S1.1(b)(3). The Defense contends that the evidence at trial failed to establish that Fischer personally engaged in sophisticated laundering, and that she instead was only willfully blind.

Note 5 to USSG § 2S1.1 defines "sophisticated laundering" as "complex or intricate offense conduct pertaining to the execution or concealment of" laundered funds. Examples include "(i) fictitious entities; (ii) shell corporations; (iii); two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or (iv) offshore financial accounts." Id.

The Court finds, by a preponderance of the evidence, that Fischer engaged in sophisticated laundering through layering, as defined in USSG § 2S1.1. The evidence presented at trial established that Fischer made two deposits of significant sums of money at two different bank branches in different cities, with deposits occurring as little as thirty minutes apart, and that her co-conspirator made five deposits on the same day. The evidence also showed that Fischer opened multiple bank accounts to deposit funds related to this action and repeatedly initiated transfers of title to her co-conspirator's house between herself and corporate entities that she owned. [Dkt. 156 ¶¶ 11, 13]. Moreover, ¶ 14 of the PSR—which the Defense has not objected to and whose allegations the Court therefore accepts as true—states that Fischer falsely categorized unaccounted-for deposits in her company's accounting system to create the appearance of legitimate income. See Occhiuto, 784 F.3d at 868 (absent an objection "supported by countervailing proof," the district court may accept the findings in the PSR without further inquiry (quoting Cyr, 337 F.3d at 100)). Considered together, these facts support the finding that Fischer engaged in sophisticated laundering, and the enhancement is therefore warranted. Cf. United States v. Edelmann, 458 F.3d 791, 816 (8th Cir. 2006) (finding sophisticated means where

"the total scheme was sophisticated," even if the component parts of the scheme were not complex).

The Court has considered the Defense's argument that Fischer's conduct might have been motivated by tax-related reasons. However, the existence of an alternative explanation does not, without more, undermine the evidence supporting the Court's finding. Accordingly, the objections are overruled.

**D. Objection 3 (Defendant) – 34 Alexandra Road**

Objection 3 from the Defense involves language in ¶¶ 12 and 13 of the PSR suggesting that Fischer transferred the title of a property located at 34 Alexandra Road in Lynnfield, Massachusetts, to conceal her co-conspirator's drug-trafficking money. The Defense contends that Fischer had no connection to the property prior to her co-conspirator's arrest in 2018 and that the transfer of title was done for tax purposes.

The Court finds, by a preponderance of the evidence, that Fischer had connections to the property prior to 2018 and that Fischer transferred title to conceal laundered funds. At trial, the Government produced exhibits of Fischer's tax returns showing that she claimed rent on the property in 2017. [Dkt. 135 at 171]. Moreover, witness testimony from a real estate broker established that Fischer personally scheduled the inspection for the property in 2016. [Dkt. 136 at 28]. Finally, exhibits of checks were produced showing that Fischer transferred the property between her corporations for $1 in 2017. [Id. at 221]. All these transactions took place prior to 2018. As to the Defense's argument that the title transfer was for tax-related reasons rather than for the purpose of concealing money laundering, the Court reiterates its prior reasoning as laid out in response to Objections 2 and 9 above. Accordingly, this objection is overruled.

**E. Objections 4 & 8 (Defendant) – Knowledge**

Objections 4 and 8 from the Defense contend that the evidence at trial did not show that

Fischer knew that the laundered funds at issue were from drug trafficking, as opposed to unspecified criminal activity. The Defense objects to language in ¶¶ 15-17 and 30 of the PSR suggesting that she had such knowledge, as well as to a corresponding six-level sentence enhancement under USSG § 2S1.1(b)(1).[2]

The Court agrees that the Government fails to show, by a preponderance of the evidence, that Fischer knew that the proceeds were from drug trafficking. While the Government points to circumstantial evidence supporting that Fischer knew the proceeds from Morose were from some type of illicit activity, the Court finds that the Government has not met its burden of producing sufficiently strong evidence that she knew it was from drug trafficking specifically. At bottom, the Government provides evidence that there were large sums of money involved and that Morose was arrested. While the Government argues that from these facts, it can be inferred that Fischer knew that Morose was involved in drug trafficking, the Court finds the connection too speculative. Any number of illicit activities—such as wire fraud, federal grant fraud, sex trafficking, and so forth—could have given rise to large sums of money and Morose's arrest. Without more, the Court finds that the Government has not provided the necessary facts supporting an inference of knowledge specifically of drug trafficking.

In their supplemental briefing, the Government provides evidence, in the form of an affidavit, that on the same day as Morose's arrest, investigators issued warrants to Fischer's car rental businesses. [Dkt. 172-1]. While agents were concluding their search of PK Motors, Fischer arrived at the business, at which point one of the special agents identified himself as a Drug Enforcement Administration ("DEA") agent. [Id. ¶¶ 1, 4]. Moreover, he was wearing a

[2] Separately, Objection 4 also raises two arguments regarding the purchase and use of the BMW i8. The Court finds that a finding regarding these facts is not necessary, as this information is not used in the sentencing calculations.

bullet-proof vest emblazoned with yellow letters that read "DEA." [Id. ¶ 4]. That same month, on June 27, 2018, Fischer transferred ownership of the single-family house at 34 Alexandra Road, Lynnfield, MA—where Morose had been living with his girlfriend—to herself. [Dkt. 136 at 221-22]. The Government contends that from these facts, it is reasonable to infer that Fischer knew that Morose's funds came from drug trafficking.

However, even if these events allegedly put Fischer on notice of Morose's activities, they occurred in June 2018, which is after the relevant time period for purposes of Fischer's knowledge. The Indictment charges Fischer with Money Laundering Conspiracy "[f]rom in or about August 2016, until in or about June of 2018." [Dkt. 1 at 1]. While the Government's evidence regarding the investigation of Morose's arrest may lead to a reasonable inference that Fischer realized that the proceeds came from drug trafficking in June 2018, they fail to show that she knew at any point prior.

Finally, the Government cites United States v. Torres-Velazquez, 480 F.3d 100 (1st Cir. 2007), for the argument that Morose's deposits of large sums of cash were sufficiently suggestive to support an inference of knowledge of drug trafficking. However, in Torres-Velazquez, the First Circuit considered additional facts beyond the large sums of cash in finding an inference of knowledge. Specifically, the First Circuit highlighted that the defendant had two prior convictions for drug dealing and thus had "prior knowledge of the drug business," including the typical "modus operandi of drug organizations." Id. at 103. Here, the Government provides no similar evidence establishing that Fischer has a history or familiarity with drug trafficking operations, such that Morose's conduct would have put her on notice as to the nature of his illicit activities.

Accordingly, these objections, insofar as they relate to Fischer's knowledge, are

sustained. The six-level enhancement for Fischer's knowledge that the proceeds were used for drug trafficking will not be applied.

**F. Objections 6, 7, 10 & 11 (Defendant) – Calculation of Total Amount of Funds**

Objections 6, 7, 10, and 11 from the Defense involve the total amount of laundered funds, which affects the base offense level for Fischer's guidelines calculations. The Defense contends that the values reflected in the Indictment, the Government's trial evidence, and the PSR differ, and she thus requests an evidentiary hearing.

The Court finds that an evidentiary hearing is not necessary on this issue and will resolve the objections on the existing record. The Defense submits that she is not providing any new evidence, nor does she challenge the accuracy of any of the individual alleged transactions listed in the PSR. Instead, she disputes the interpretation of the Government's trial exhibits, namely, Exhibit 176. See United States v. Cirilo, 803 F.3d 73, 75 (1st Cir. 2015) (rejecting PSR objections where "[a]t no point did defense counsel directly or specifically challenge any of the facts about the burglary that the report recounted" and "[a]t no point in this exchange did the Defense counsel say anything to challenge the substance of the factual allegations contained in the report").

Having carefully considered the arguments presented in the Defense's sentencing memorandum and during oral argument, the Court finds, by a preponderance of the evidence, that the Government's calculations, as reflected in its trial exhibits and expert testimony, are credible and reliable. See United States v. Fernandez, 559 F.3d 303, 319-20 (5th Cir. 2009) (upholding district court's calculation of the total amount of laundered funds based on circumstantial evidence); United States v. Lucena-Rivera, 750 F.3d 43, 49-50 (1st Cir. 2014) (same). The Defense's sentencing memo sets forth six arguments that the Court has considered but ultimately finds are not meritorious.

First, the Defense contends that $474,983 in funds that the Government counted as "mattress money" instead consisted of legitimate funds that PK Motors kept on hand for operating expenses. However, the Defense identifies no specific trial evidence supporting its characterization of these funds as legitimate operating-expense reserves, and the trial record otherwise supports the Government's treatment of the funds.

Second, the Defense argues that $62,621 and $99,353 in funds that the Government classified as "mattress money" consisted of Fischer's personal money and should therefore be excluded from the calculation. However, the Court finds, by a preponderance of the evidence, that the funds were properly included in the calculation of cash deposits. The trial record shows that Fischer's only reported source of income was managing her car rental businesses, with no other identifiable source that would account for the more than $150,000 in deposited cash. [See Dkt. 156 ¶¶ 71-73]. From these facts, it is reasonable to infer that the cash was "mattress money."

Third, the Defense argues that $181,355 in funds that the Government counted as "mattress money" constituted cash purchases of vehicles at an auction in Quincy, MA, which should be excluded from the calculation because the purchases were not related to Morose's drug trafficking. However, this argument misconstrues the purpose of the Government's exhibit. The exhibit constitutes a rebuttal exhibit, and it serves to document cash transactions to reconcile cash deposits for which Fischer provided no adequate explanation. The allegation that the vehicle purchases might not have been directly related to drug trafficking does not, by itself, create a material factual dispute.

Fourth, the Defense argues that the handwritten cash receipts presented at trial, totaling approximately $2.5 million, reflected only luxury rentals and did not account for revenue from

traditional rentals. Citing testimony from Fischer's partner that the couple received up to $5,000 per day through traditional rentals, the Defense contends that revenue from those rentals explains the otherwise unaccounted-for cash deposits. [See Dkt. 137 at 149]. The Court is not persuaded. The trial evidence shows that PK Motors maintained records of traditional vehicle rentals, including dates and total charges. [Id. at 228-30]. Yet the Defense has not provided a calculation of the total revenue generated by those rentals, instead only asserting in a generalized manner that shortfalls are explainable from those transactions. Moreover, PK Motors reported ordinary business income of $12,461 in 2015, and $557,994 in 2016. [Dkt. 136 at 55-56]. Even assuming comparable income levels from 2010 to 2014 as in 2015, those amounts would not account for the $1.2 million shortfall identified by the Government. Finally, the Government explains that its exhibits do, in fact, include both traditional fleet rental income.

Fifth, the Defense argues that several boxes of handwritten records were seized by the Government but were not introduced as exhibits, and thus may contain additional entries that would account for some of the missing cash deposits. However, the Government's exhibits indicate that the seized boxes contained a variety of materials, including "bank records, rental records, client records," "financial documents," and "miscellaneous documents." [Trial Exs. 165-167]. The record therefore does not establish that the boxes consisted of additional handwritten ledger entries or that their contents would materially alter the Government's calculation. Nor does the Defense identify specific gaps in the existing records, such as missing dates or contemporaneous receipts reflecting transactions absent from the ledgers. Indeed, the Government represents that the boxes were merely consolidated and not disposed of or hidden. [Dkt. 165 at 3].

Sixth, the Defense submits an affidavit from her accounting witness stating that, during

trial, he failed to account for a portion of the handwritten notes reflecting cash fees for dealer-license use and auction access. [Dkt. 155-1]. According to the Defense, this missing information could account for some of the missing cash deposits. However, although the affidavit identifies a potential omission, it does not establish the amount of any resulting discrepancy or otherwise demonstrate how the Government's calculation is materially inaccurate. The Court has considered the affidavit together with the trial evidence and finds that the Defense has not identified a sufficient basis to undermine the reliability of the Government's calculation.

Accordingly, the objections are overruled. The Court adopts the PSR's conclusion that the total amount of laundered funds is $1,509,580.50. [Dkt. 156 ¶ 22].

## IV. CONCLUSION

For the foregoing reasons, the Court is inclined to **SUSTAIN** Fischer's objections regarding the six-point enhancement for knowledge of drug trafficking and **OVERRULE** Fischer's remaining objections. This tentative ruling is the proposed decision of the Court and does not constitute a final order until the conclusion of the sentencing.

**SO ORDERED.**

Dated: November 13, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge