UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-10309-AK |
| | ) | |
| CHRISTIANE FISCHER, | ) | |
| Defendant. | ) | |

# PRELIMINARY ORDER OF FORFEITURE

**KELLEY, D.J.**

WHEREAS, on November 16, 2022, a federal grand jury sitting in the District of Massachusetts returned a one-count Indictment, charging defendant Christiane Fischer (the "Defendant"), with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h) (Count One);

WHEREAS, the Indictment included a Money Laundering Forfeiture Allegation, which provided notice that the United States intended to seek forfeiture, pursuant to 18 U.S.C. § 982(a)(1), and upon conviction of the Defendant of the offense set forth in Count One of the Indictment, of any property, real or personal, involved in such offense, and any property traceable to such property;

WHEREAS, the property to be forfeited included, but was not limited to, the following:

a. Real Property located at 195 Washington Street, Peabody, Massachusetts (the "Peabody Property");

b. Real Property located at 369 Salem Street, Malden, Massachusetts (the "Malden Property"); and

c. Real Property located at 34 Alexandra Road, Lynnfield, Massachusetts (the "Lynnfield Property")

(collectively referred to as the "Real Properties");

WHEREAS, the Indictment further provided that if any of the above-described forfeitable

property, as a result of any act or omission by the Defendant, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, it is the intention of the United States, pursuant to 18 U.S.C. § 982(b), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the Defendant, up to the value of the property described above;

WHEREAS, on November 24, 2025, after a six-day jury trial, a jury found the defendant guilty of Count One of the Indictment;

WHEREAS, the evidence and testimony introduced at trial revealed that that the Defendant had been participating in a money laundering conspiracy with Philip Morose ("Morose") (*United States v. Philip Morose,* CR No. 18-10242-NMG),[1] and others, from August of 2016 through June of 2018;

WHEREAS, during the Defendant's trial, a Florida-based individual (the "CW") testified that between 2014 and 2018 he (the CW) supplied Morose with over $2 million in fentanyl pills;

WHEREAS, the CW further testified that in June of 2018, at the direction of investigators, the CW and Morose arranged to have an associate of the CW (who was an undercover agent) deliver fentanyl pills to Morose, and at the same time, Morose agreed to provide the associate with $26,000 that Morose owed to the CW;

[1] Morose pled guilty in June of 2020 and was sentenced in his criminal case in March of 2025. He was sentenced to eighty months and two weeks incarceration, and his sentence is being served concurrently with the term of imprisonment that Morose is currently serving on Docket #8:18CR237-T-23AEP as imposed in the United States District Court, Middle District of Florida. Morose was also ordered to forfeit the Real Properties.

WHEREAS, on June 4, 2018, Morose met with the undercover agent to make the planned exchange and was subsequently arrested attempting to deliver $20,930 to the person he believed was the CW's cousin (the undercover agent);

WHEREAS, the evidence introduced at trial established that the Defendant allowed Morose to use her businesses, PK Motors, Inc. ("PK Motors"), which is located at the Peabody Property, and Uni Auto Center, Inc. ("Uni Rentals") and Uni Realty Group, LLC ("Uni Realty Group"), both of which are located at the Malden Property, to conceal his drug trafficking proceeds through sophisticated money laundering methods, such as layering, structuring, and co-mingling;

WHEREAS, the government offered nearly 200 exhibits, including bank records, business records, and summary charts that proved that the Defendant conspired with Morose and others to launder at least $1.5 million dollars of Morose's drug proceeds;

WHEREAS, an example of the sophisticated laundering employed by the Defendant occurred on November 3, 2016, when Morose layered five different cash deposits into four different PK Motors bank accounts totaling $106,939, and the Defendant layered $100,000 in cash deposits into different PK Motors accounts at Bank of America, at different branches, 30 minutes apart;

WHEREAS, cash deposits by Morose recorded via Currency Transaction Reports showed that Morose deposited $928,375 through 37 cash deposits on 15 different days between September 21, 2016, and April 6, 2017, into PK Motors bank accounts;

WHEREAS, on July 1 and 8, 2016, Morose deposited $22,000 and $3,000 into a PK Motors bank account;

WHEREAS, the evidence at trial also showed that $451,650 was applied towards

renovating the property located at 34 Alexandra Road, Lynnfield, Massachusetts, and $54,556.00 was applied towards the purchase of a Chevrolet Tahoe;

WHEREAS, the Government offered testimony and evidence that between November 1, 2016, and December 28, 2016, Morose layered 27 separate cash deposits into six different PK Motors bank accounts totaling $676,009, and during this same period the Defendant deposited $247,000 in cash into multiple PK Motors bank accounts;

WHEREAS, on December 30, 2016, PK Motors purchased the Lynnfield Property, a single-family home, for approximately $749,350 in cash;

WHEREAS, the money to purchase the Lynnfield Property was withdrawn from PK Motors bank accounts over a series of days by Morose and the Defendant, and in late October and early November 2016, PK Motors funded down payments totaling $37,750;

WHEREAS, the Defendant and Morose then paid the balance of $717,099 owed at the closing for the Lynnfield Property via three separate cashier's checks drawn from three different PK Motors bank accounts; specifically, on December 6, 2016, the Defendant withdrew $150,000, on December 29, 2016, Morose withdrew $230,000, and on December 30, 2016, Morose withdrew $337,099.83, and each of the cashier's checks were payable to the same law firm handling the closing for the Lynnfield Property;

WHEREAS, in 2017, Morose spent about $451,680 of his drug proceeds to renovate the property;

WHEREAS, while the Lynnfield Property was initially purchased in the name of PK Motors in December 2016, the Defendant further concealed Morose's drug money by layering/transferring ownership of the Lynnfield Property;

WHEREAS, the Defendant transferred ownership of the Lynnfield Property from PK Motors to the newly incorporated UNI Realty Group LLC, in April of 2017, for which the Defendant was the sole officer, and then quitclaimed the Lynnfield Property again in June 2018, after Morose was arrested, to herself (the Defendant) individually;

WHEREAS, the Defendant and co-conspirator withdrew approximately $805,809 from PK Motors, Uni Rentals, Uni Realty Group, and the Defendant's personal bank accounts to finance the cash purchase of the Peabody Property, which was finalized on June 16, 2017;

WHEREAS, the Defendant and a co-conspirator withdrew approximately $288,670 from PK Motors bank accounts to finance the cash purchase of the Malden Property, which was finalized on December 11, 2017, and Edith Morose, Morose's mother, signed the Housing and Urban Development ("HUD") Settlement Statement on behalf of Uni Realty Group;

WHEREAS, the evidence at trial further established that the Defendant conspired to let Morose use her businesses to promote his drug trafficking, as Morose purchased multiple vehicles under the Defendant's business's name, including a BMW i8 and a Chevrolet Tahoe, and then used those vehicles to engage in drug trafficking;

WHEREAS, based on the evidence and testimony introduced at trial, the facts set forth during the trial, and the Defendant's conviction on Count One of the Indictment, the United States has established the requisite nexus between the Real Properties and the offense to which the Defendant was convicted, and accordingly, the Real Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1); and

WHEREAS, pursuant to 18 U.S.C § 982(a)(1) and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the United States is now entitled to a Preliminary Order of Forfeiture against

the Real Properties.

ACCORDINGLY, it is hereby ORDERED, ADJUDGED, AND DECREED that:

1. The Court finds, based upon the evidence and testimony presented at trial and the Defendant's conviction, that the government has established the requisite nexus between the Real Properties and the offense to which the Defendant has been found guilty.

2. The Court shall retain jurisdiction in this case for the purpose of enforcing this Order.

3. Accordingly, all of Defendant's interests in the Real Properties are hereby forfeited to the United States of America for disposition pursuant to 18 U.S.C § 982(a)(1).

4. Pursuant to 21 U.S.C. § 853(n)(1), as incorporated by 18 U.S.C. § 982(b), the United States shall publish, for thirty (30) consecutive calendar days on the government forfeiture website www.forfeiture.gov, notice of the Preliminary Order of Forfeiture and notice of the United States' intent to dispose of the Real Properties.

5. Pursuant to 21 U.S.C. § 853(n)(1), as incorporated by 18 U.S.C. § 982(b), the United States shall give, to the extent practicable, direct written notice to any person known to have alleged an interest in the Real Properties to be forfeited.

6. Pursuant to 21 U.S.C. § 853(n)(2) and (3), as incorporated by 18 U.S.C. § 982(b), the notice referred to above shall state: (a) that any person, other than the Defendant, asserting a legal interest in the Real Properties, shall, within sixty (60) days after the first day of publication on the government forfeiture website or within thirty (30) days after receipt of actual notice, whichever is earlier, file a petition with the United States District Court in Boston, Massachusetts, requesting a hearing to adjudicate the validity of his or her interest in the Real Properties; and (b)

that the petition shall be signed by the petitioner under the penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Real Properties, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the Real Properties, any additional facts supporting the petitioner's claim, and the relief sought.

7. Pursuant to 21 U.S.C. § 853(n)(7), as incorporated by 18 U.S.C. § 982(b), following the Court's disposition of all petitions filed under 21 U.S.C. § 853(n)(6), or if no such petitions are filed following the expiration of the period provided in 21 U.S.C. § 853(n)(2) for the filing of such petitions, the United States of America shall have clear title to the Real Properties.

8. Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture, pursuant to 18 U.S.C § 982(a)(1) and Rule 32.2(c) of the Federal Rules of Criminal Procedure, in which all interests will be addressed.

9. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Preliminary Order of Forfeiture will become final as Defendant at the time of her sentencing, will be part of the Defendant's criminal sentence, and will be included in the criminal judgment entered by this Court against her.

/s/ Angel Kelley

**ANGEL KELLEY**
United States District Judge

Dated: 11/13/2026